OMB Approval No. 0938-0685

## 6. Ownership Interest and/or Managing Control Information (Individuals)

This section is to be completed with information about any individual that has a 5% or greater (direct or indirect) ownership interest in, or any partnership interest in, the supplier identified in Section 2B. All officers, directors, and managing employees of the supplier must also be reported in this section. In addition, any information on adverse legal actions that have been imposed against the individuals reported in this section must be furnished. If there is more than one individual, copy and complete this section for each.

### A. Individual with Ownership Interest and/or Managing Control—Identification Information

☐ Add                    ☐ Delete                    ☐ Change            Effective Date: _____

| 1. Name      First | Middle | Last | Jr., Sr., etc. |
|---|---|---|---|
| ROGER | L. | HEADRICK | N/A |

| Social Security Number | Date of Birth (MM/DD/YYYY) | Credentials (M.D., O.D., etc.) N/A |
|---|---|---|
| ▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓ | |

| Medicare Identification Number (if applicable)    N/A | Effective Date of Ownership (MM/DD/YYYY)    N/A | Effective Date of Control *** (MM/DD/YYYY) |
|---|---|---|

2. If the above individual is **directly** associated with the supplier in Section 2B, what is this individual's relationship with the supplier? (Check all that apply.)
   ☐ 5% or Greater Owner          ☐ Partner              ☐ Managing Employee
   ☐ Director/Officer              ☐ Other (Specify): _____

3. If the above individual is **directly** associated with an organization identified in Section 5B, furnish the name of that organization in the space below:          ***SEE ATTACHED FOR EFFECTIVE DATE OF CONTROL
   Legal Business Name of Organization:    CAREMARK RX, INC.

4. What is this individual's role with the organization reported in Section 6A3 above (check all that apply)?
   ☐ 5% or Greater Owner          ☐ Partner              ☐ Managing Employee
   ☒ Director/Officer              ☐ Other (Specify): _____

### B. Adverse Legal History          ☐ Change          ☐ Effective Date: _____

**Please read the applicable instructions before completing this section.** This section is to be completed <u>only</u> if the individual in Section 6A above is a 5% or greater <u>owner</u> (direct or indirect), or has a <u>partnership</u> interest in, or is an actual employee of, or director/officer of, the supplier identified in Section 2B.

1. Has the individual in Section 6A above, under any current or former name or business identity, <u>ever</u> had any of the adverse legal actions listed in Table A in Section 3A imposed against him or her?          ☐ YES  ☒ NO

2. **IF YES**, report each adverse legal action, when it occurred, the law enforcement authority/court/administrative body that imposed the action; and the resolution. Attach a copy of the adverse legal action documentation(s) and resolution(s).

| Adverse Legal Action: | Date: | Law Enforcement Authority: | Resolution: |
|---|---|---|---|
| N/A | | | |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

REDACTED

CMS 855B (11/2001)

OMB Approval No. 0938-06

## 6. Ownership Interest and/or Managing Control Information (Individuals)

This section is to be completed with information about any individual that has a 5% or greater (direct or indirect) ownership interest in, or any partnership interest in, the supplier identified in Section 2B. All officers, directors, and managing employees of the supplier must also be reported in this section. In addition, any information on adverse legal actions that have been imposed against the individuals reported in this section must be furnished. If there is more than one individual copy and complete this section for each.

### A. Individual with Ownership Interest and/or Managing Control—Identification Information

☐ Add          ☐ Delete          ☐ Change          Effective Date: _____

| 1. Name    First | Middle | Last | Jr., Sr., etc. |
|---|---|---|---|
| TED | H. | McCOURTNEY | N/A |

| Social Security Number | Date of Birth (MM/DD/YYYY) | Credentials (M.D., O.D., etc.) N/A |
|---|---|---|

| Medicare Identification Number (if applicable)    N/A | Effective Date of Ownership (MM/DD/YYYY) N/A | Effective Date of Control (MM/DD/YYYY) *** |
|---|---|---|

**2.** If the above individual is **directly** associated with the supplier in Section 2B, what is this individual's relationship with the supplier? (Check all that apply.)

☐ 5% or Greater Owner          ☐ Partner          ☐ Managing Employee
☐ Director/Officer          ☐ Other (Specify): _____

**3.** If the above individual is **directly** associated with an organization identified in Section 5B, furnish the name of that organization in the space below:          ***SEE ATTACHED FOR EFFECTIVE DATE OF CONTROL
Legal Business Name of Organization: CAREMARK RX, INC. _____

**4.** What is this individual's role with the organization reported in Section 6A3 above (check all that apply)?

☐ 5% or Greater Owner          ☐ Partner          ☐ Managing Employee
☒ Director/Officer          ☐ Other (Specify): _____

### B. Adverse Legal History          ☐ Change          ☐ Effective Date: _____

**Please read the applicable instructions before completing this section.** This section is to be completed only if the individual in Section 6A above is a 5% or greater owner (direct or indirect), or has a partnership interest in, or is an actual employee of, or director/officer of, the supplier identified in Section 2B.

**1.** Has the individual in Section 6A above, under any current or former name or business identity, ever had any of the adverse legal actions listed in Table A in Section 3A imposed against him or her?          ☐ YES ☒ NO

**2.** IF YES, report each adverse legal action, when it occurred, the law enforcement authority/court/administrative body that imposed the action, and the resolution. Attach a copy of the adverse legal action documentation(s) and resolution(s).

| Adverse Legal Action: | Date: | Law Enforcement Authority: | Resolution: |
|---|---|---|---|
| N/A | | | |
| | | | |
| | | | |

CMS 855B (11/2001)

OMB Approval No. 0938-0685

## 6. Ownership Interest and/or Managing Control Information (Individuals)

This section is to be completed with information about any individual that has a 5% or greater (direct or indirect) ownership interest in, or any partnership interest in, the supplier identified in Section 2B. All officers, directors, and managing employees of the supplier must also be reported in this section. In addition, any information on adverse legal actions that have been imposed against the individuals reported in this section must be furnished. If there is more than one individual, copy and complete this section for each.

### A. Individual with Ownership Interest and/or Managing Control—Identification Information

☐ Add          ☐ Delete          ☐ Change          Effective Date: _____

| 1. Name      First JEAN-PIERRE | Middle | Last MILLON | Jr., Sr., etc. N/A |
|---|---|---|---|
| Social Security Number ▓▓▓▓ | | Date of Birth (MM/DD/YYYY) ▓▓▓▓ | Credentials (M.D., O.D., etc.) N/A |

| Medicare Identification Number (if applicable)    N/A | Effective Date of Ownership (MM/DD/YYYY)    N/A | Effective Date of Control (MM/DD/YYYY)    *** |
|---|---|---|

2. If the above individual is **directly** associated with the supplier in Section 2B, what is this individual's relationship with the supplier? (Check all that apply.)

☐ 5% or Greater Owner          ☐ Partner          ☐ Managing Employee
☐ Director/Officer          ☐ Other (Specify): _____

3. If the above individual is **directly** associated with an organization identified in Section 5B, furnish the name of that organization in the space below:    ***SEE ATTACHED FOR EFFECTIVE DATE OF CONTROL
   Legal Business Name of Organization:  CAREMARK RX, INC.

4. What is this individual's role with the organization reported in Section 6A3 above (check all that apply)?

☐ 5% or Greater Owner          ☐ Partner          ☐ Managing Employee
☒ Director/Officer          ☐ Other (Specify): _____

### B. Adverse Legal History          ☐ Change          ☐ Effective Date: _____

**Please read the applicable instructions before completing this section.** This section is to be completed **only** if the individual in Section 6A above is a 5% or greater **owner** (direct or indirect), or has a **partnership** interest in, or is an actual employee of, or director/officer of, the supplier identified in Section 2B.

1. Has the individual in Section 6A above, under any current or former name or business identity, **ever** had any of the adverse legal actions listed in Table A in Section 3A imposed against him or her?          ☐ YES  ☒ NO

2. IF YES, report each adverse legal action, when it occurred, the law enforcement authority/court/administrative body that imposed the action, and the resolution. Attach a copy of the adverse legal action documentation(s) and resolution(s).

| Adverse Legal Action: | Date: | Law Enforcement Authority: | Resolution: |
|---|---|---|---|
| N/A | | | |
| | | | |
| | | | |



CMS 855B (11/2001)

OMB Approval No. 0938-0685

## 6. Ownership Interest and/or Managing Control Information (Individuals)

This section is to be completed with information about any individual that has a 5% or greater (direct or indirect) ownership interest in, or <u>any</u> partnership interest in, the supplier identified in Section 2B. All officers, directors, and managing employees of the supplier must also be reported in this section. In addition, any information on adverse legal actions that have been imposed against the individuals reported in this section must be furnished. If there is more than one individual, copy and complete this section for each.

**A.   Individual with Ownership Interest and/or Managing Control—Identification Information**

☐ Add          ☐ Delete          ☐ Change          Effective Date:_____

| 1.   Name      First | Middle | Last | Jr., Sr., etc. |
|---|---|---|---|
| C.A. | LANCE | PICCOLO | N/A |

| Social Security Number | Date of Birth (MM/DD/YYYY) | Credentials (M.D., O.D., etc.) N/A |
|---|---|---|
| ▓▓▓▓▓▓ | | |

| Medicare Identification Number (if applicable)    N/A | Effective Date of <u>Ownership</u> (MM/DD/YYYY)    N/A | Effective Date of <u>Control</u>  *** (MM/DD/YYYY) |
|---|---|---|

2.   If the above individual is <u>directly</u> associated with the supplier in Section 2B, what is this individual's relationship with the supplier? (Check all that apply.)
☐ 5% or Greater Owner          ☐ Partner          ☐ Managing Employee
☐ Director/Officer          ☐ Other (Specify):_____

3.   If the above individual is <u>directly</u> associated with an organization identified in Section 5B, furnish the name of that organization in the space below:          ***SEE ATTACHED FOR EFFECTIVE DATE OF CONTROL
Legal Business Name of Organization:   CAREMARK RX, INC._____

4.   What is this individual's role with the organization reported in Section 6A3 above (check all that apply)?
☐ 5% or Greater Owner          ☐ Partner          ☐ Managing Employee
☒ Director/Officer          ☐ Other (Specify):_____

**B.   Adverse Legal History**          ☐ Change          ☐ Effective Date:_____

**Please read the applicable instructions before completing this section.** This section is to be completed <u>only</u> if the individual in Section 6A above is a 5% or greater <u>owner</u> (direct or indirect), or has a <u>partnership</u> interest in, or is an actual employee of, or director/officer of, the supplier identified in Section 2B.

1.   Has the individual in Section 6A above, under any current or former name or business identity, <u>ever</u> had any of the adverse legal actions listed in Table A in Section 3A imposed against him or her?          ☐ YES ☒ NO

2.   **IF YES,** report each adverse legal action, when it occurred, the law enforcement authority/court/administrative body that imposed the action, and the resolution. Attach a copy of the adverse legal action documentation(s) and resolution(s).

| Adverse Legal Action: | Date: | Law Enforcement Authority: | Resolution: |
|---|---|---|---|
| N/A | | | |
| | | | |
| | | | |

REDACTED

CMS 855B (11/2001)

## 6. Ownership Interest and/or Managing Control Information (Individuals)

This section is to be completed with information about any individual that has a 5% or greater (direct or indirect) ownership interest in, or any partnership interest in, the supplier identified in Section 2B. All officers, directors, and managing employees of the supplier must also be reported in this section. In addition, any information on adverse legal actions that have been imposed against the individuals reported in this section must be furnished. If there is more than one individual, copy and complete this section for each.

**A. Individual with Ownership Interest and/or Managing Control—Identification Information**

☐ Add          ☐ Delete          ☐ Change          Effective Date:_____

| 1. Name    First | Middle | Last | Jr., Sr., etc. |
|---|---|---|---|
| MICHAEL | D. | WARE | N/A |

| Social Security Number | Date of Birth (MM/DD/YYYY) | Credentials (M.D., O.D., etc.) N/A |
|---|---|---|
| ▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓ | |

| Medicare Identification Number (if applicable)    N/A | Effective Date of Ownership (MM/DD/YYYY)    N/A | Effective Date of Control (MM/DD/YYYY)    *** |
|---|---|---|

2. If the above individual is **directly** associated with the supplier in Section 2B, what is this individual's relationship with the supplier? (Check all that apply.)
   ☐ 5% or Greater Owner          ☐ Partner          ☐ Managing Employee
   ☐ Director/Officer             ☐ Other (Specify):_____

3. If the above individual is **directly** associated with an organization identified in Section 5B, furnish the name of that organization in the space below:          ***SEE ATTACHED FOR EFFECTIVE DATE OF CONTROL
   Legal Business Name of Organization:  CAREMARK RX, INC.

4. What is this individual's role with the organization reported in Section 6A3 above (check all that apply)?
   ☐ 5% or Greater Owner          ☐ Partner          ☐ Managing Employee
   ☒ Director/Officer             ☐ Other (Specify):_____

**B. Adverse Legal History**          ☐ Change          ☐ Effective Date:_____

**Please read the applicable instructions before completing this section.** This section is to be completed only if the individual in Section 6A above is a 5% or greater owner (direct or indirect), or has a partnership interest in, or is an actual employee of, or director/officer of, the supplier identified in Section 2B.

1. Has the individual in Section 6A above, under any current or former name or business identity, ever had any of the adverse legal actions listed in Table A in Section 3A imposed against him or her?          ☐ YES  ☒ NO

2. IF YES, report each adverse legal action, when it occurred, the law enforcement authority/court/administrative body that imposed the action, and the resolution. Attach a copy of the adverse legal action documentation(s) and resolution(s).

| Adverse Legal Action: | Date: | Law Enforcement Authority: | Resolution: |
|---|---|---|---|
| N/A | | | |
| | | | |

REDACTED

CMS 855B (11/2001)

OMB Approval No. 0938-0685

## 6. Ownership Interest and/or Managing Control Information (Individuals)

This section is to be completed with information about any individual that has a 5% or greater (direct or indirect) ownership interest in, or any partnership interest in, the supplier identified in Section 2B. All officers, directors, and managing employees of the supplier must also be reported in this section. In addition, any information on adverse legal actions that have been imposed against the individuals reported in this section must be furnished. If there is more than one individual, copy and complete this section for each.

### A. Individual with Ownership Interest and/or Managing Control—Identification Information

☐ Add     ☒ Delete     ☐ Change     Effective Date: __08/09/2004__

| 1.  Name    First          Middle         | Last            KOHNER | Jr., Sr., etc.    N/A |
|---|---|---|
| Social Security Number | Date of Birth (MM/DD/YYYY) | Credentials (M.D., O.D., etc.)  N/A |

JOHN

| Medicare Identification Number (if applicable)    N/A | Effective Date of Ownership (MM/DD/YYYY)    N/A | Effective Date of Control (MM/DD/YYYY)  06/05/1997 |
|---|---|---|

2.  If the above individual is **directly** associated with the supplier in Section 2B, what is this individual's relationship with the supplier? (Check all that apply.)

☐ 5% or Greater Owner     ☐ Partner            ☐ Managing Employee
☐ Director/Officer         ☒ Other (Specify): __Delegated Official__

3.  If the above individual is **directly** associated with an organization identified in Section 5B, furnish the name of that organization in the space below:
    Legal Business Name of Organization: _____

4.  What is this individual's role with the organization reported in Section 6A3 above (check all that apply)?

☐ 5% or Greater Owner     ☐ Partner            ☐ Managing Employee
☐ Director/Officer         ☐ Other (Specify): _____

### B. Adverse Legal History     ☐ Change     ☐ Effective Date: _____

**Please read the applicable instructions before completing this section.** This section is to be completed only if the individual in Section 6A above is a 5% or greater owner (direct or indirect), or has a partnership interest in, or is an actual employee of, or director/officer of, the supplier identified in Section 2B.

1.  Has the individual in Section 6A above, under any current or former name or business identity, ever had any of the adverse legal actions listed in Table A in Section 3A imposed against him or her?     ☐ YES  ☒ NO

2.  IF YES, report each adverse legal action, when it occurred, the law enforcement authority/court/administrative body that imposed the action, and the resolution. Attach a copy of the adverse legal action documentation(s) and resolution(s).

| Adverse Legal Action: | Date: | Law Enforcement Authority: | Resolution: |
|---|---|---|---|
| N/A | | | |
| | | | |
| | | | |

REDACTED

CMS 855B (11/2001)

OMB Approval No. 0938-068

## 6. Ownership Interest and/or Managing Control Information (Individuals)

This section is to be completed with information about any individual that has a 5% or greater (direct or indirect) ownership interest in, or **any** partnership interest in, the supplier identified in Section 2B. All officers, directors, and managing employees of the supplier must also be reported in this section. In addition, any information on adverse legal actions that have been imposed against the individuals reported in this section must be furnished. If there is more than one individual, copy and complete this section for each.

### A. Individual with Ownership Interest and/or Managing Control—Identification Information

☐ Add ☒ Delete ☐ Change **Effective Date:** _03/24/2004_

| 1. Name | First | Middle | | Last | | Jr., Sr., etc. |
|---|---|---|---|---|---|---|
| | Adolphus | D. | | Frazier | | Jr. |

| Social Security Number | Date of Birth (MM/DD/YYYY) | Credentials (M.D., O.D., etc.) N/A |
|---|---|---|
| ▓▓▓▓▓ | ▓▓▓▓▓ | |

| Medicare Identification Number (if applicable) N/A | Effective Date of Ownership (MM/DD/YYYY) N/A | Effective Date of Control (MM/DD/YYYY) 08/01/2002 |
|---|---|---|

2. If the above individual is **directly** associated with the supplier in Section 2B, what is this individual's relationship with the supplier? (Check all that apply.)
☐ 5% or Greater Owner ☐ Partner ☐ Managing Employee
☒ Director/Officer ☐ Other (Specify): _____

3. If the above individual is **directly** associated with an organization identified in Section 5B, furnish the name of that organization in the space below:
Legal Business Name of Organization: _____

4. What is this individual's role with the organization reported in Section 6A3 above (check all that apply)?
☐ 5% or Greater Owner ☐ Partner ☐ Managing Employee
☐ Director/Officer ☐ Other (Specify): _____

### B. Adverse Legal History          ☐ Change          ☐ Effective Date: _____

**Please read the applicable instructions before completing this section.** This section is to be completed **only** if the individual in Section 6A above is a 5% or greater **owner** (direct or indirect), or has a **partnership** interest in, or is an actual employee of, or director/officer of, the supplier identified in Section 2B.

1. Has the individual in Section 6A above, under any current or former name or business identity, **ever** had any of the adverse legal actions listed in Table A in Section 3A imposed against him or her? ☐ YES ☒ NO

2. IF YES, report each adverse legal action, when it occurred, the law enforcement authority/court/administrative body that imposed the action, and the resolution. Attach a copy of the adverse legal action documentation(s) and resolution(s).

| Adverse Legal Action: | Date: | Law Enforcement Authority: | Resolution: |
|---|---|---|---|
| N/A | | | |
| | | | |
| | | | |

REDACTED

CMS 855B (11/2001)

OMB Approval No. 0938-0685

| 11. Surety Bond Information | This Section Not Applicable. |
|---|---|

| 12. Capitalization Requirements for Home Health Agencies | This Section Not Applicable |
|---|---|

### 13. Contact Person(s)

Furnish the name(s) and telephone number(s) of a person(s) who can answer questions about the information furnished in this application. If a contact person is not furnished in this section, all questions will be directed to the authorized official named in Section 15B.

**A.** Check here ☐ if this section does not apply and skip to Section 14.

**B.** 1st Contact Name and Telephone Number ☒ Add    ☐ Delete    ☐ Change    Effective Date: _____

| Name: First | Last | E-mail Address (if applicable) | Telephone Number | (Ext.) |
|---|---|---|---|---|
| Sandy | Campa | Sandy.Campa@Caremark.co█ | ( ) | ( ) |

**C.** 2nd Contact Name and Telephone Number ☐ Add    ☐ Delete    ☐ Change    Effective Date: _____

| Name: First | Last | E-mail Address (if applicable) | Telephone Number | (Ext.) |
|---|---|---|---|---|
| | | | ( ) | ( ) |

### 14. Penalties for Falsifying Information on this Enrollment Application

This section explains the penalties for deliberately furnishing false information to gain enrollment in the Medicare program.

1.  18 U.S.C. § 1001 authorizes criminal penalties against an individual who, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry.

    Individual offenders are subject to fines of up to $250,000 and imprisonment for up to five years. Offenders that are organizations are subject to fines of up to $500,000 (18 U.S.C. § 3571). Section 3571(d) also authorizes fines of up to twice the gross gain derived by the offender if it is greater than the amount specifically authorized by the sentencing statute.

2.  Section 1128B(a)(1) of the Social Security Act authorizes criminal penalties against any individual who, "knowingly and willfully," makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under a Federal health care program.

    The offender is subject to fines of up to $25,000 and/or imprisonment for up to five years.

3.  The Civil False Claims Act, 31 U.S.C. § 3729, imposes civil liability, in part, on any person who:
    a.)  knowingly presents, or causes to be presented, to an officer or any employee of the United States Government a false or fraudulent claim for payment or approval;
    b.)  knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; or
    c.)  conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

    The Act imposes a civil penalty of $5,000 to $10,000 per violation, plus three times the amount of damages sustained by the Government.

4.  Section 1128A(a)(1) of the Social Security Act imposes civil liability, in part, on any person (including an organization, agency or other entity) that knowingly presents or causes to be presented to an officer, employee, or agent of the United States, or of any department or agency thereof, or of any State agency...a claim...that the Secretary determines is for a medical or other item or service that the person knows or should know:
    a.)  was not provided as claimed; and/or
    b.)  the claim is false or fraudulent.

    This provision authorizes a civil monetary penalty of up to $10,000 for each item or service, an assessment of up to three times the amount claimed, and exclusion from participation in the Medicare program and State health care programs.

5.  The government may assert common law claims such as "common law fraud," "money paid by mistake," and "unjust enrichment."

    Remedies include compensatory and punitive damages, restitution, and recovery of the amount of the unjust profit.

CMS 855B (11/2001)

REDACTED

## 1. Certification Statement

This section is used to officially notify the supplier of additional requirements that must be met and maintained in order for a supplier to be enrolled in the Medicare program. This section also requires the signature and date thereof of an authorized Official who can legally and financially bind the supplier to the laws, regulations, and program instructions of a Medicare program. Section 16 permits the "Authorized Official" to delegate signature authority to other individual(s) (delegated Officials) employed by the supplier for the purpose of reporting future changes to the supplier's enrollment record. See instructions to determine who qualifies as an Authorized Official and a Delegated Official for the supplier.

### Additional Requirements for Medicare Enrollment

By his/her signature(s), the authorized official named below and the delegated official(s) named in Section 16 agree to adhere to the following requirements stated in this Certification Statement:

1) I agree to notify the Medicare contractor of any future changes to the information contained in this form within 90 days of the effective date of the change. I understand that any change in the business structure of this supplier may require the submission of a new application.

2) I have read and understand the Penalties for Falsifying Information, as printed in this application. I understand that any deliberate omission, misrepresentation, or falsification of any information contained in this application or contained in any communication supplying information to Medicare, or any deliberate alteration of any text on this application form, may be punished by criminal, civil, or administrative penalties including, but not limited to, the revocation of Medicare billing number(s), and/or the imposition of fines, civil damages, and/or imprisonment.

3) I agree to abide by the Medicare laws, regulations and program instructions that apply to this supplier. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.

4) Neither this supplier, nor any 5% or greater owner, partner, officer, director, W-2 managing employee, authorized official, or delegated official thereof is currently sanctioned, suspended, debarred, or excluded by the Medicare or Medicaid program, or any other Federal program, or is otherwise prohibited from supplying services to Medicare or other Federal program beneficiaries.

5) I agree that any existing or future overpayment made to the supplier by the Medicare program may be recouped by Medicare through the withholding of future payments.

6) I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

### B. Authorized Official Signature    ☐ Add    ☐ Delete    ☐ Change    Effective Date: _____

I have read the contents of this application. My signature legally and financially binds this supplier to the laws, regulations, and program instructions of the Medicare program. By my signature, I certify that the information contained herein is true, correct, and complete, to the best of my knowledge, and I authorize the Medicare program contractor to verify this information. If I become aware that any information in this application is not true, correct, or complete, I agree to notify the Medicare program contractor of this fact immediately.

| Authorized Official Name Print | First David | Middle W. | Last Golding | Jr., Sr., etc. |
|---|---|---|---|---|
| Authorized Official Signature | (First, Middle, Last, Jr., Sr., M.D., D.O., etc.) | | Title/Position Senior Vice President | Date (MM/DD/YYYY) Signed 10/28/04 |

CMS 855B (11/2001)

OMB Approval No. 0938-0685

## 15. Certification Statement

This section is used to officially notify the supplier of additional requirements that must be met and maintained in order for the supplier to be enrolled in the Medicare program. This section also requires the signature and date thereof of an "Authorized Official" who can legally and financially bind the supplier to the laws, regulations, and program instructions of the Medicare program. Section 16 permits the "Authorized Official" to delegate signature authority to other individual(s) (Delegated Officials) employed by the supplier for the purpose of reporting future changes to the supplier's enrollment record. See instructions to determine who qualifies as an Authorized Official and a Delegated Official for the supplier.

### A. Additional Requirements for Medicare Enrollment

By his/her signature(s), the authorized official named below and the delegated official(s) named in Section 16 agree to adhere to the following requirements stated in this Certification Statement:

1.) I agree to notify the Medicare contractor of any future changes to the information contained in this form within 90 days of the effective date of the change. I understand that any change in the business structure of this supplier may require the submission of a new application.

2.) I have read and understand the Penalties for Falsifying Information, as printed in this application. I understand that any deliberate omission, misrepresentation, or falsification of any information contained in this application or contained in any communication supplying information to Medicare, or any deliberate alteration of any text on this application form, may be punished by criminal, civil, or administrative penalties including, but not limited to, the revocation of Medicare billing number(s), and/or the imposition of fines, civil damages, and/or imprisonment.

3.) I agree to abide by the Medicare laws, regulations and program instructions that apply to this supplier. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.

4.) Neither this supplier, nor any 5% or greater owner, partner, officer, director, W-2 managing employee, authorized official, or delegated official thereof is currently sanctioned, suspended, debarred, or excluded by the Medicare or Medicaid program, or any other Federal program, or is otherwise prohibited from supplying services to Medicare or other Federal program beneficiaries.

5.) I agree that any existing or future overpayment made to the supplier by the Medicare program may be recouped by Medicare through the withholding of future payments.

6.) I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

### B. Authorized Official Signature    ☐ Add    ☐ Delete    ☐ Change    Effective Date:_____

I have read the contents of this application. My signature legally and financially binds this supplier to the laws, regulations, and program instructions of the Medicare program. By my signature, I certify that the information contained herein is true, correct, and complete, to the best of my knowledge, and I authorize the Medicare program contractor to verify this information. If I become aware that any information in this application is not true, correct, or complete, I agree to notify the Medicare program contractor of this fact immediately.

| Authorized Official Name Print | First David | Middle W. | Last Golding | Jr., Sr., etc. |
|---|---|---|---|---|
| Authorized Official Signature | (First, Middle, Last, Jr., Sr., M.D., D.O., etc.) | | Title/Position Senior Vice President | Date (MM/DD/YYYY) Signed 10-14-04 |

41    CMS 855B (11/2001)

## 6. Delegated Official (Optional)

The signature of the authorized official below constitutes a legal delegation of authority to the official(s) named in this section to make changes and/or updates to this supplier's enrollment information. The signature(s) of the delegated official(s) shall have the same force and effect as that of the authorized official, and shall legally and financially bind the supplier to the laws, regulations, and program instructions of the Medicare program. By his or her signature, the delegated official certifies that he or she has read the Certification Statement in Section 15 and agrees to adhere to all of the stated requirements. The delegated official also certifies that he/she meets the definition of a delegated official. When making changes and/or updates to the supplier's enrollment information maintained by the Medicare program, the delegated official certifies that the information provided is true, correct, and complete. If assigning more than one delegated official (maximum of three), copy and complete this section as needed.

A. Check here ☐ if this supplier will not be assigning any delegated official(s) and skip to Section 17.

B. Delegated Official Signature    ☐ Add    ☐ Delete    ☐ Change    Effective Date:_____

| 1. Delegated Official Name    First | Middle | Last | Jr., Sr., etc. |
|---|---|---|---|
| Print    George | | Pavlakis | |

| Delegated Official Signature    (First, Middle, Last, Jr., Sr., M.D., D.O., etc.) | Date (MM/DD/YYYY) Signed 10/07/2004 |
|---|---|

| Title/Position Vice President, Reimbursement | ☑ Check here only if Delegated Official is a W-2 employee |
|---|---|

| 2. Signature of Authorized Official    (First, Middle, Last, Jr., Sr., M.D., D.O., etc.) Assigning this Delegation | Date (MM/DD/YYYY) Signed 10-14-04 |
|---|---|

## 17. Attachments

This section is a list of documents that, if applicable, should be submitted with this completed enrollment application.

Place a check next to each document (as applicable or required) from the list below that is being included with this completed application.

☐ Copy(s) of all Federal, State, and/or local (city/county) professional licenses, certifications and/or registrations specifically required to operate as a health care facility
☐ Copy(s) of all Federal, State, and/or local (city/county) business licenses, certifications and/or registrations specifically required to operate as a health care facility
☐ Copy(s) of all professional school degrees or certificates, or evidence of qualifying course work
☐ Copy(s) of all documentation verifying IDTF Supervisory Physician(s) proficiency
☐ Copy(s) of all CLIA Certificates, FDA Mammography Certificates, and Diabetes Education Certificates
☑ Copy(s) of all State Pharmacy licenses
☐ Copy(s) of all adverse legal action documentation (e.g., notifications, resolutions, and reinstatement letters)
☐ Copy(s) of all current signed electronic data interchange (EDI) agreements
☐ Copy(s) of all partnership agreements
☐ Copy(s) of all articles of incorporation and/or corporate charters
☐ Completed Form HCFA-588 - Authorization Agreement for Electronic Funds Transfer
☐ Completed Form(s) CMS 855R - Individual Reassignment of Benefits
☑ IRS documents confirming the tax identification number and legal business name (e.g., CP 575)
☑ Any additional documentation or letters of explanation as needed

    Copy of liability insurance certificate
    Copy of 1st and signature page of Agreement and Plan of Merger dated September 2003;
Notice of Annual Meeting of Shareholders of Caremark Rx, Inc., to be held May 4, 2004.
Page 7 listing officers and directors of Caremark Rx, Inc., and Page 8 regarding retirement of
A.D. Frazier, Jr. and signature page from Proxy Statement dated April 9, 2004.

CMS 855B (11/2001)

OMB Approval No. 0938-0685

## 16. Delegated Official (Optional)

The signature of the authorized official below constitutes a legal delegation of authority to the official(s) named in this section to make changes and/or updates to this supplier's enrollment information. The signature(s) of the delegated official(s) shall have the same force and effect as that of the authorized official, and shall legally and financially bind the supplier to the laws, regulations, and program instructions of the Medicare program. By his or her signature, the delegated official certifies that he or she has read the Certification Statement in Section 15 and agrees to adhere to all of the stated requirements. The delegated official also certifies that he/she meets the definition of a delegated official. When making changes and/or updates to the supplier's enrollment information maintained by the Medicare program, the delegated official certifies that the information provided is true, correct, and complete. If assigning more than one delegated official (maximum of three), copy and complete this section as needed.

A.  Check here ☐ if this supplier will not be assigning any delegated official(s) and skip to Section 17.

B.  Delegated Official Signature    ☐ Add    ☐ Delete    ☐ Change    Effective Date:_____

| 1.  Delegated Official Name    First | Middle | Last | Jr., Sr., etc. |
|---|---|---|---|
| Print            *George* | | *Pavlakis* | |

| Delegated Official Signature    (First, Middle, Last, Jr., Sr., M.D., D.O., etc.) | Date (MM/DD/YYYY) Signed *10/07/2004* |
|---|---|

| Title/Position Vice President, Reimbursement | ☐ Check here only if Delegated Official is a W-2 employee |
|---|---|

| 2.  Signature of Authorized Official    (First, Middle, Last, Jr., Sr., M.D., D.O., etc.) Assigning this Delegation | Date (MM/DD/YYYY) Signed *10-14-04* |
|---|---|

## 17. Attachments

This section is a list of documents that, if applicable, should be submitted with this completed enrollment application.

Place a check next to each document (as applicable or required) from the list below that is being included with this completed application.

☐ Copy(s) of all Federal, State, and/or local (city/county) <u>professional</u> licenses, certifications and/or registrations specifically required to operate as a health care facility
☐ Copy(s) of all Federal, State, and/or local (city/county) <u>business</u> licenses, certifications and/or registrations specifically required to operate as a health care facility
☐ Copy(s) of all professional school degrees or certificates, or evidence of qualifying course work
☐ Copy(s) of all documentation verifying IDTF Supervisory Physician(s) proficiency
☐ Copy(s) of all CLIA Certificates, FDA Mammography Certificates, and Diabetes Education Certificates
☒ Copy(s) of all State Pharmacy licenses
☐ Copy(s) of all adverse legal action documentation (e.g., notifications, resolutions, and reinstatement letters)
☐ Copy(s) of all current signed electronic data interchange (EDI) agreements
☐ Copy(s) of all partnership agreements
☐ Copy(s) of all articles of incorporation and/or corporate charters
☐ Completed Form HCFA-588 - Authorization Agreement for Electronic Funds Transfer
☐ Completed Form(s) CMS 855R - Individual Reassignment of Benefits
☒ IRS documents confirming the tax identification number and legal business name (e.g., CP 575)
☒ Any additional documentation or letters of explanation as needed

*Copy of liability insurance certificate*
*Copy of 1st and signature page of Agreement and Plan of Merger dated September 2003;*
*Notice of Annual Meeting of Shareholders of Caremark Rx, Inc., to be held May 4, 2004.*
*Page 7 listing officers and directors of Caremark Rx, Inc., and Page 8 regarding retirement of*
*A.D. Frazier, Jr. and signature page from Proxy Statement dated April 9, 2004.*

CMS 855B (11/2001)

## 16. Delegated Official (Optional)

The signature of the authorized official below constitutes a legal delegation of authority to the official(s) named in this section to make changes and/or updates to this supplier's enrollment information. The signature(s) of the delegated official(s) shall have the same force and effect as that of the authorized official, and shall legally and financially bind the supplier to the laws, regulations, and program instructions of the Medicare program. By his or her signature, the delegated official certifies that he or she has read the Certification Statement in Section 15 and agrees to adhere to all of the stated requirements. The delegated official also certifies that he/she meets the definition of a delegated official. When making changes and/or updates to the supplier's enrollment information maintained by the Medicare program, the delegated official certifies that the information provided is true, correct, and complete. If assigning more than one delegated official (maximum of three), copy and complete this section as needed.

**A.** Check here ☐ **if this supplier will not be assigning any delegated official(s) and skip to Section 17.**

**B. Delegated Official Signature**   ☐ **Add**   ☐ **Delete**   ☐ **Change**   **Effective Date:**___

| 1. Delegated Official Name    First | Middle | Last | Jr., Sr., etc. |
|---|---|---|---|
| **Print**    *Sandy* | *L.* | *Campa* | |

| Delegated Official **Signature**    (First, Middle, Last, Jr., Sr., M.D., D.O., etc.) | Date (MM/DD/YYYY) Signed  *9/28/04* |
|---|---|
| *Sandy L. Minger* | |

| Title/Position   *Providership Supervisor* | ☐ Check here only if Delegated Official is a W-2 employee* |
|---|---|

| 2. **Signature** of Authorized Official   (First, Middle, Last, Jr., Sr., M.D., D.O., etc.) Assigning this Delegation | Date (MM/DD/YYYY) Signed  *10-14-04* |
|---|---|

## 17. Attachments

This section is a list of documents that, if applicable, should be submitted with this completed enrollment application.

Place a check next to each document (as applicable or required) from the list below that is being included with this completed application.

☐ Copy(s) of all Federal, State, and/or local (city/county) <u>professional</u> licenses, certifications and/or registrations specifically required to operate as a health care facility
☐ Copy(s) of all Federal, State, and/or local (city/county) <u>business</u> licenses, certifications and/or registrations specifically required to operate as a health care facility
☐ Copy(s) of all professional school degrees or certificates, or evidence of qualifying course work
☐ Copy(s) of all documentation verifying IDTF Supervisory Physician(s) proficiency
☐ Copy(s) of all CLIA Certificates, FDA Mammography Certificates, and Diabetes Education Certificates
☒ Copy(s) of all State Pharmacy licenses
☐ Copy(s) of all adverse legal action documentation (e.g., notifications, resolutions, and reinstatement letters)
☐ Copy(s) of all current signed electronic data interchange (EDI) agreements
☐ Copy(s) of all partnership agreements
☐ Copy(s) of all articles of incorporation and/or corporate charters
☐ Completed Form HCFA-588 - Authorization Agreement for Electronic Funds Transfer
☐ Completed Form(s) CMS 855R - Individual Reassignment of Benefits
☒ IRS documents confirming the tax identification number and legal business name (e.g., CP 575)
☒ Any additional documentation or letters of explanation as needed

*Copy of liability insurance certificate*
*Copy of 1st and signature page of Agreement and Plan of Merger dated September 2003;*
*Notice of Annual Meeting of Shareholders of Caremark Rx, Inc., to be held May 4, 2004.*
*Page 7 listing officers and directors of Caremark Rx, Inc., and Page 8 regarding retirement of*
*A.D. Frazier, Jr. and signature page from Proxy Statement dated April 9, 2004.*

CMS 855B (11/2001)

## 16. Delegated Official (Optional)

The signature of the authorized official below constitutes a legal delegation of authority to the official(s) named in this section to make changes and/or updates to this supplier's enrollment information. The signature(s) of the delegated official(s) shall have the same force and effect as that of the authorized official, and shall legally and financially bind the supplier to the laws, regulations, and program instructions of the Medicare program. By his or her signature, the delegated official certifies that he or she has read the Certification Statement in Section 15 and agrees to adhere to all of the stated requirements. The delegated official also certifies that he/she meets the definition of a delegated official. When making changes and/or updates to the supplier's enrollment information maintained by the Medicare program, the delegated official certifies that the information provided is true, correct, and complete. If assigning more than one delegated official (maximum of three), copy and complete this section as needed.

A. Check here ☐ if this supplier will not be assigning any delegated official(s) and skip to Section 17.

B. Delegated Official Signature    ☐ Add    ☐ Delete    ☐ Change    Effective Date:_____

| 1. Delegated Official Name    First    Print    Sandy | Middle    L. | Last    Campa | Jr . Sr.. etc. |
|---|---|---|---|

| Delegated Official Signature    (First, Middle, Last, Jr., Sr., M.D., D.O., etc.) | Date (MM/DD/YYYY) Signed  9/28/04 |
|---|---|

| Title/Position    Providership Supervisor | ☒ Check here only if Delegated Official is a W-2 employee* | |
|---|---|---|

| 2. Signature of Authorized Official  (First, Middle, Last, Jr., Sr., M.D., D.O., etc.) Assigning this Delegation | Date (MM/DD/YYYY) Signed  10-14-04 |
|---|---|

## 17. Attachments

This section is a list of documents that, if applicable, should be submitted with this completed enrollment application

Place a check next to each document (as applicable or required) from the list below that is being included with this completed application.

☐ Copy(s) of all Federal, State, and/or local (city/county) professional licenses, certifications and/or registrations specifically required to operate as a health care facility
☐ Copy(s) of all Federal, State, and/or local (city/county) business licenses, certifications and/or registrations specifically required to operate as a health care facility
☐ Copy(s) of all professional school degrees or certificates, or evidence of qualifying course work
☐ Copy(s) of all documentation verifying IDTF Supervisory Physician(s) proficiency
☐ Copy(s) of all CLIA Certificates, FDA Mammography Certificates, and Diabetes Education Certificates
☒ Copy(s) of all State Pharmacy licenses
☐ Copy(s) of all adverse legal action documentation (e.g., notifications, resolutions, and reinstatement letters)
☐ Copy(s) of all current signed electronic data interchange (EDI) agreements
☐ Copy(s) of all partnership agreements
☐ Copy(s) of all articles of incorporation and/or corporate charters
☐ Completed Form HCFA-588 - Authorization Agreement for Electronic Funds Transfer
☐ Completed Form(s) CMS 855R - Individual Reassignment of Benefits
☒ IRS documents confirming the tax identification number and legal business name (e.g., CP 575)
☒ Any additional documentation or letters of explanation as needed

    Copy of liability insurance certificate
    Copy of 1st and signature page of Agreement and Plan of Merger dated September 2003;
Notice of Annual Meeting of Shareholders of Caremark Rx, Inc., to be held May 4, 2004.
Page 7 listing officers and directors of Caremark Rx, Inc., and Page 8 regarding retirement of
A.D. Frazier, Jr. and signature page from Proxy Statement dated April 9, 2004.

CMS 855B (11/2001)

| Officer/Director | Entities of Which Individual is Officer/Director of | Effective Date of Control |
|---|---|---|
| Edwin Crawford | Caremark Rx, Inc. | 03/01/1998 |
| Edward Hardin, Jr. | Caremark Rx, Inc. | 06/01/1998 |
| David Joyner | Caremark Rx, Inc. | 11/29/1995 |
| Bradley Karro | Caremark Rx, Inc. | 05/01/1998 |
| | Caremark International Inc. | 03/24/2004 |
| Kirk McConnell | Caremark Rx, Inc. | 10/01/1997 |
| | Caremark International Inc. | 05/01/2001 |
| Howard McLure | Caremark Rx, Inc. | 06/01/1998 |
| | Caremark International Inc. | 06/01/2000 |
| Rudy Mladenovic | Caremark Rx, Inc. | 03/24/2004 |
| Diane Nobles | Caremark Rx, Inc. | 11/29/1995 |
| | Caremark International Inc. | 09/01/1996 |
| Richard Scardina | Caremark Rx, Inc. | 11/29/1995 |
| Peter Clemens IV | Caremark Rx, Inc. | 11/29/1995 |
| Sara Finley | Caremark Rx, Inc. | 11/29/1995 |
| | Caremark International Inc. | 09/10/1998 |
| David Golding | Caremark Rx, Inc. | 11/29/1995 |
| Mark Weeks | Caremark Rx, Inc. | 11/29/1995 |
| Edwin Banks | Caremark Rx, Inc. | 05/01/2000 |
| C. David Brown II | Caremark Rx, Inc. | 03/01/2001 |
| Colleen Conway-Welch | Caremark Rx, Inc. | 05/01/2001 |
| Harris Diamond | Caremark Rx, Inc. | 05/01/2000 |
| Kristen Gibney-Williams | Caremark Rx, Inc. | 02/01/1999 |
| Roger Headrick | Caremark Rx, Inc. | 09/01/1996 |
| Ted McCourtney | Caremark Rx, Inc. | 11/19/1995 |
| Jean-Pierre Millon | Caremark Rx, Inc. | 03/24/2004 |
| C.A. Lance Piccolo | Caremark Rx, Inc. | 09/01/1996 |
| Michael Ware | Caremark Rx, Inc. | 03/24/2004 |

***Attachment for Directors/Officers of Caremark Rx, Inc. and Caremark International, Inc.**

## THE OIG INVESTIGATION:

In June 1995 Caremark Inc. entered guilty pleas to two counts of mail fraud under Title 18 United States Code, Section 1341, one in each of the United States District Court for the District of Minnesota and United States District Court for the District of Southern District of Ohio (Columbus).

These pleas represented the culmination of efforts to resolve all of Caremark's issues with the federal government and the various states relating to various government investigations. As a result of the pleas, the plea agreements and a series of related agreements entered with agencies of the federal government and specifically the Department of Health and Human Services ("HHS") and the 50 states, Caremark successfully and finally resolved these outstanding issues. Based on these agreements, Caremark will continue to provide products and services to the Medicare and Medicaid programs in all 50 states and the District of Columbia, and to all agencies of the United States government. Simply stated, those sovereigns determined, based on all the facts and circumstances, that Caremark can and should be permitted to continue to do business with the government and all government-funded programs.

The guilty pleas stemmed from conduct undertaken by certain Caremark employees acting in violation of corporate policy. Specifically the informations alleged that Caremark employees used certain agreements and other financial programs to induce physicians to refer their patients to Caremark for treatment. Because Caremark failed to disclose to the federal health care programs that these activities had occurred in some instances, Caremark deprived the agency of relevant proprietary information. This, the informations alleged and Caremark agreed, constituted a fraud against the agency, one furthered by use of the U.S. Mails. We emphasize that nothing in these charges in any way questioned the quality, safety or prices of any goods or services provided by Caremark to any of its patients. Caremark entered these pleas and admitted that some of its employees had engaged in wrongdoing. In a public statement made at the time of the pleas, Caremark's Chief Executive Officer apologized for the misconduct of the employees and assured that rigorous steps would be taken to prevent any occurrence of those problems. Indeed, as part of the settlement process, Caremark implemented a Corporate Integrity Agreement with the approval of the U.S. government that sets industry standards for compliance with all state Medicaid and Medicare programs.

When Caremark entered its plea in the Ohio federal court, the parties agreed and the sentencing court found that no high-ranking officer of Caremark participated in or condoned the wrongdoing reflected in the information. That finding illustrates that the offenses committed, while regrettable, were not the product of a corporation operating as a criminal enterprise.



Retail Pharmacy Permit

BOARD OF PHARMACY
400 R STREET, SUITE 4070
SACRAMENTO, CA 95814-6237
(916) 445-5014

VALID UNTIL JULY 01, 2005

LICENSE NO. PHY 39314
RECEIPT NO. DD035206

CAREMARK THERAPEUTIC SERVICES
1127 BRYN MAWR DRIVE SUITE A
REDLANDS CA 92374

-------- NON-TRANSFERABLE! --- POST IN PUBLIC VIEW --------

08/01/04
08/01/04

Internal Revenue Service

CINCINNATI, OH  45999

In reply refer to:  1752205827
Jan. 05, 1996   LTR 147C
          0000 00 000
                              00641

CAREMARK INC
2215 SANDERS RD STE 400
NORTHBROOK  IL  60062-6150112

      Employer Identification Number:
              IRS Control Number:

Dear Taxpayer:

We received your request dated Nov. 28, 1995 asking us to verify
your employer identification number (EIN) and name.

This letter confirms that your employer identification number (EIN)
as shown on our records is ████████ and your name as shown on our
records is Caremark Inc -
Please attach a copy of this letter to a copy of the "B" Notice you
received and return both items to the payer(s) who requested
verification of your EIN.

If you have any questions about this letter, please write us at
the address shown on this letter.  If you prefer, you may call the IRS
telephone number listed in your local directory.  An employee there
can help you, but the office at the address shown on this letter
is most familiar with your case.

Whenever you write, please include your telephone number, the hours
you can be reached, and this letter.  You also may want to keep a
copy of this letter for your records.

Your telephone number (    )_____  Hours_____

Internal Revenue Service

Jan. 05, 1996    1752205827
                 LTR 147C
                 0000 00 000
                         00642

CAREMARK INC
2215 SANDERS RD STE 400
NORTHBROOK  IL  60062-6150112

We apologize for any inconvenience we may have caused you, and thank
you for your cooperation.

                          Sincerely yours,

                          Sheron D. Farley
                          Chief, Special Processing Section

Enclosure(s):
Copy of this letter

# ACORD. CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
5/28/2004

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | |
|---|---|---|
| GALLAGHER HEALTHCARE INSURANCE SERVICES, INC. ONE BRIARLAKE PLAZA 2000 WEST SAM HOUSTON PARKWAY SOUTH SUITE 2000 HOUSTON, TX 77042 | | |
| | **INSURERS AFFORDING COVERAGE** | NAIC # |
| INSURED | INSURER A: COLUMBIA CASUALTY INSURANCE CO | 31127 |
| CAREMARK RX, INC. (CAREMARK, INC. ADVANCE PCS, INC.) 211 COMMERCE STREET NASHVILLE, TN 37201 | INSURER B: | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADDL INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY CLAIMS MADE X OCCUR | MASTER HMC1066904107 | 06/01/2004 | 09/01/2005 | EACH OCCURRENCE | $3,000,00 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | INCLUDED |
| | | | | | | MED EXP (Any one person) | N/A |
| | | | | | | PERSONAL & ADV INJURY | INCLUDED |
| | | PRODUCTS - COMPLETED OP AGG | | | | GENERAL AGGREGATE | $5,000,00 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY PRO-JECT LOC | | | | PRODUCTS - COMP/OP AGG | $5,000,00 |
| | | **AUTOMOBILE LIABILITY** ANY AUTO ALL OWNED AUTOS SCHEDULED AUTOS HIRED AUTOS NON-OWNED AUTOS | N/A | N/A | N/A | COMBINED SINGLE LIMIT (Ea accident) | N/A |
| | | | | | | BODILY INJURY (Per person) | N/A |
| | | | | | | BODILY INJURY (Per accident) | N/A |
| | | | | | | PROPERTY DAMAGE (Per accident) | N/A |
| | | **GARAGE LIABILITY** ANY AUTO | N/A | N/A | N/A | AUTO ONLY – EA ACCIDENT | N/A |
| | | | | | | OTHER THAN EA ACC AUTO ONLY: AGG | N/A N/A |
| | | **EXCESS/UMBRELLA LIABILITY** OCCUR CLAIMS MADE DEDUCTIBLE RETENTION | N/A | N/A | N/A | EACH OCCURRENCE | N/A |
| | | | | | | AGGREGATE | N/A |
| | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | N/A | N/A | N/A | X WC STATU-TORY LIMITS X OTH-ER | N/A |
| | | | | | | E.L. EACH ACCIDENT | N/A |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | N/A |
| | | | | | | E.L. DISEASE - POLICY LIMIT | N/A |
| A | | **OTHER** PROFESSIONAL LIABILITY CLAIMS MADE | HMC1066904107 | 06/01/2004 | 09/01/2005 | $3,000,000 EACH OCCURRENCE $5,000,000 AGGREGATE | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| CAREMARK, INC. 1127 BRYN MAWR AVENUE REDLANDS, CA 92374 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08)                                                      @ACORD CORPORATION 1988

# IMPORTANT

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

## DISCLAIMER

The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend for alter the coverage afforded by the policies listed thereon.

ACORD 25 (2001/08)

## AGREEMENT AND PLAN OF MERGER

THIS AGREEMENT AND PLAN OF MERGER (this "*Agreement*"), dated as of the 2nd day of September, 2003, is by and among CAREMARK RX, INC., a Delaware corporation ("*Parent*"), COUGAR MERGER CORPORATION, a Delaware corporation ("*Merger Sub*") and a direct wholly owned subsidiary of Parent; and ADVANCEPCS, a Delaware corporation (the "*Company*").

### W I T N E S S E T H:

WHEREAS, upon the terms and subject to the conditions of this Agreement and in accordance with the General Corporation Law of the State of Delaware (the "*DGCL*"), Parent and the Company will enter into a business combination transaction pursuant to which Merger Sub will merge with and into the Company (the "*Merger*");

WHEREAS, the Board of Directors of the Company has (i) determined that the Merger is consistent with and in furtherance of the long-term business strategy of the Company and in the best interests of the Company and the holders of the Class A common stock, par value $0.01 per share, of the Company (the "*Company Class A Common Stock*"), the holders of the Class B-1 common stock, par value $0.01 per share, of the Company (the "*Company Class B-1 Common Stock*"), and the holders of the Class B-2 common stock, par value $0.01 per share, of the Company (the "*Company Class B-2 Common Stock*," and, collectively with the Company Class A Common Stock and the Company Class B-1 Common Stock, the "*Company Common Stock*"), and has approved and adopted this Agreement and declared its advisability and approved the Merger and the other transactions contemplated by this Agreement and (ii) has recommended that the stockholders of the Company approve and adopt this Agreement and the Merger;

WHEREAS, the Board of Directors of Parent (i) has determined that the Merger is consistent with and in furtherance of the long-term business strategy of Parent and in the best interests of Parent and its stockholders and has approved and adopted this Agreement, the Merger and the other transactions contemplated by this Agreement and (ii) has recommended that the stockholders of Parent approve and adopt the Amended Parent Certificate of Incorporation and approve the issuance of Parent Common Stock in connection with the Merger and the other transactions contemplated hereby;

WHEREAS, the Board of Directors of Merger Sub (i) has determined that the Merger is consistent with and in furtherance of the long-term business strategy of Merger Sub and in the best interests of Merger Sub and its stockholder and has approved and adopted this Agreement, the Merger and the other transactions contemplated by this Agreement and (ii) has recommended that Parent approve and adopt this Agreement and the Merger;

WHEREAS, Parent, in its capacity as sole stockholder of Merger Sub, has approved and adopted this Agreement and the Merger by unanimous written consent in accordance with the requirements of the DGCL; and

WHEREAS, for federal income tax purposes, it is intended by Parent, Merger Sub and the Company that the Merger shall qualify as a "reorganization" within the meaning of Section 368(a) of the Internal Revenue Code of 1986, as amended (the "*Code*"), and that this Agreement shall constitute a plan of "reorganization";

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants and agreements contained in this Agreement and intending to be legally bound hereby, the parties hereto agree as follows:

### ARTICLE I

### THE MERGER

Section 1.1. *The Merger.* Upon the terms and subject to the conditions of this Agreement, and in accordance with the DGCL, at the Effective Time, Merger Sub shall be merged with and into the

Company. As a result of the Merger, the separate corporate existence of Merger Sub shall cease and the Company shall continue as the surviving corporation following the Merger (the "*Surviving Corporation*"). The corporate existence of the Company shall continue unaffected and unimpaired by the Merger and, as the Surviving Corporation, it shall be governed by the laws of the State of Delaware.

Section 1.2. *Effective Time; Closing.* As promptly as practicable (and in any event within two business days) after the satisfaction or waiver of the conditions set forth in Article VI hereof (other than those conditions that by their nature are to be satisfied at the Closing), the parties hereto shall cause the Merger to be consummated by filing a certificate of merger (the "*Certificate of Merger*"), with the Secretary of State of the State of Delaware and by making all other filings or recordings required under the DGCL in connection with the Merger, in such form as is required by, and executed in accordance with the relevant provisions of, the DGCL. The Merger shall become effective at such time as the Certificate of Merger is duly filed with the Secretary of State of the State of Delaware, or at such other time as the parties hereto agree and as shall be specified in the Certificate of Merger (the date and time the Merger becomes effective, the "*Effective Time*"). On the date of such filing, a closing (the "*Closing*") shall be held at 10:00 a.m., Eastern Standard Time, at the offices of King & Spalding LLP ("*King & Spalding*"), 191 Peachtree Street, Atlanta, Georgia 30303, or at such other time and location as the parties hereto shall otherwise agree.

Section 1.3. *Effect of the Merger.* At the Effective Time, the effect of the Merger shall be as provided in the applicable provisions of the DGCL. Without limiting the generality of the foregoing, and subject thereto, at the Effective Time, except as otherwise provided herein, all the property, rights, privileges, powers and franchises of the Company and Merger Sub shall vest in the Surviving Corporation, and all debts, liabilities, obligations, restrictions, disabilities and duties of the Company and Merger Sub shall become the debts, liabilities, obligations, restrictions, disabilities and duties of the Surviving Corporation.

Section 1.4. *Certificate of Incorporation and Bylaws.*

(a) The Certificate of Incorporation, as amended, of the Surviving Corporation shall be amended in the Merger to read as set forth in Exhibit A, until the same shall thereafter be altered, amended or repealed in accordance with applicable Law and such Certificate of Incorporation.

(b) The Bylaws of Merger Sub as of the Effective Time shall be the Bylaws of the Surviving Corporation, until the same shall thereafter be altered, amended or repealed in accordance with applicable Law, the Certificate of Incorporation of the Surviving Corporation and such Bylaws.

Section 1.5. *Directors and Officers.* From and after the Effective Time, until the earlier of their resignation or removal or until their respective successors are duly elected or appointed and qualified in accordance with applicable Law, (i) the directors of Merger Sub at the Effective Time shall be the directors of the Surviving Corporation and (ii) the officers of Merger Sub at the Effective Time shall be the officers of the Surviving Corporation.

Section 8.13. *Notices.* All notices, requests, claims, demands and other communications hereunder shall be in writing and shall be given (and shall be deemed to have been duly given upon receipt) by delivery in person, by telecopy or by registered or certified mail (postage prepaid, return receipt requested) to the respective parties at the following addresses, or at such other address for a party as shall be specified in a notice given in accordance with this Section 8.13:

| | |
|---|---|
| If to Parent or Merger Sub: | Caremark Rx, Inc.<br>3000 Galleria Tower, Suite 1000<br>Birmingham, Alabama 35244<br>Telecopier:   205/982-7709<br>Attention:     Chief Executive Officer<br>                 General Counsel |
| with a copy to:<br>(which shall not constitute notice) | King & Spalding LLP<br>191 Peachtree Street<br>Atlanta, Georgia 30306<br>Telecopier:   404/572-5147<br>Attention:     William R. Spalding |
| If to the Company: | AdvancePCS<br>750 West John Carpenter Freeway, Suite 1200<br>Irving, Texas 75039<br>Telecopier:   469/524-7972<br>Attention:     Chief Executive Officer<br>                 General Counsel<br>                 SVP, Corporate Affairs and Secretary |
| with a copy to:<br>(which shall not constitute notice) | Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, NY 10036<br>Telecopier:   212/735-3000<br>Attention:     Paul T. Schnell<br>                 Neil P. Stronski |

62

IN WITNESS WHEREOF, the Company, Parent and Merger Sub and have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

ADVANCEPCS

By:        /s/ DAVID D. HALBERT

Name:     David D. Halbert
Title:      Chairman of the Board, President and Chief Executive Officer

CAREMARK RX, INC.

By:        /s/ E. MAC CRAWFORD

Name:     E. Mac Crawford
Title:      Chairman and Chief Executive Officer

COUGAR MERGER CORPORATION

By:        /s/ E. MAC CRAWFORD

Name:     E. Mac Crawford
Title:      President

63

## Caremark Rx, Inc.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201

April 9, 2004

### NOTICE OF ANNUAL MEETING OF STOCKHOLDERS
### TO BE HELD TUESDAY, MAY 4, 2004

The 2004 annual meeting of stockholders of Caremark Rx, Inc. will be held at The Hermitage Hotel, 231 6th Avenue North, Nashville, Tennessee, 37219 on Tuesday, May 4, 2004, at 9:00 a.m. Central Time, for the following purposes:

1.  Election of four directors, each to serve for a term of three years.

2.  Any other matters that properly come before the meeting.

Stockholders of record at the close of business on April 1, 2004 are entitled to vote at the meeting or any postponement or adjournment thereof. A list of stockholders as of the close of business on April 1, 2004 will be available at our principal place of business for examination by any stockholder during the period from April 20, 2004 through the 2004 annual meeting of stockholders.

**Please review the voting options on the attached proxy card and submit your vote promptly. If you attend the annual meeting, you may revoke your proxy and vote in person if you desire to do so, but attendance at the annual meeting does not itself serve to revoke your proxy.**

By Order of the Board of Directors.

Sara J. Finley
*Corporate Secretary*

## STOCK OWNERSHIP OF DIRECTORS AND EXECUTIVE OFFICERS

The following table shows the amount of common stock of the Company beneficially owned (unless otherwise indicated) by each of the Company's directors, selected executive officers and the directors and selected executive officers of the Company as a group. Consistent with the Company's compensation philosophy described below, the stock ownership reflected in this table represents the alignment of the named individuals' financial interests with the general interests of the Company's stockholders because the value of their total stock holdings will increase or decrease in line with value of the Company's stock. Except as otherwise indicated, all information is as of March 29, 2004, when there were 458,580,916 shares outstanding. Shares of the Company's common stock subject to options held by the directors and selected executive officers that are exercisable within 60 days of March 29, 2004 are deemed outstanding for the purpose of computing their beneficial ownership individually and as a group. The Chief Executive Officer and the four other most highly compensated executive officers as of December 31, 2003 are included in this table. These individuals may be referred to collectively in this Proxy Statement as the "Named Executive Officers."

| Name | Position Held | Aggregate Number of Shares of Common Stock Beneficially Owned(1) | Percent of Shares of Common Stock Outstanding |
|---|---|---|---|
| Edwin M. Crawford | Chief Executive Officer, Chairman of the Board and Director | 9,576,000 | 2.05% |
| A.D. Frazier, Jr.(2) | President, Chief Operating Officer and Director | 671,674 | * |
| Edward L. Hardin, Jr. | Executive Vice President, General Counsel and Director | 303,940 | * |
| Bradley S. Karro | Executive Vice President of Corporate Development | 215,635 | * |
| Howard A. McLure | Executive Vice President and Chief Financial Officer | 332,950 | * |
| Edwin M. Banks | Director | 119,640 | * |
| C. David Brown II | Director | 85,715 | * |
| Colleen Conway-Welch | Director | 83,615 | * |
| Harris Diamond | Director | 105,580 | * |
| Kristen E. Gibney Williams | Director | 140,475 | * |
| Roger L. Headrick | Director | 269,548 | * |
| Ted H. McCourtney | Director | 235,170 | * |
| Jean-Pierre Millon | Director | 40,850 | * |
| C.A. Lance Piccolo | Director | 640,483 | * |
| George Poste | Director | 14,334 | * |
| Michael D. Ware | Director | 140,109 | * |
| All executive officers and directors as a group (20 persons) | | 13,766,659 | 2.92% |

\* Less than one percent.

(1) The number of shares shown includes shares that are individually or jointly owned, as well as shares over which the individual has either sole or shared investment or voting authority. Certain of the Company's directors and Named Executive Officers may disclaim beneficial ownership of certain shares included in the table, and certain of the shares included in the table represent options to purchase shares, which are exercisable on or before May 28, 2004, described as follows:

  • Mr. Crawford—includes options to purchase 9,526,000 shares.

  • Mr. Frazier—includes options to purchase 670,000 shares.

- Mr. Hardin—includes options to purchase 294,400 shares, and includes 350 shares held by his son and 5,000 shares held by his spouse. Mr. Hardin disclaims beneficial ownership of the shares held by his son and his spouse.

- Mr. Karro—includes options to purchase 209,040 shares.

- Mr. McLure—includes options to purchase 329,450 shares, and includes 1,500 shares held by his spouse. Mr. McLure disclaims beneficial ownership of the shares held by his spouse.

- Mr. Banks—includes options to purchase 100,250 shares and 5,895 stock units accrued under the Company's Director Deferred Compensation Plan. The Director Deferred Compensation Plan is described below in "The Board of Directors and Board Committees—Director Compensation."

- Mr. Brown—includes options to purchase 75,250 shares and 5,465 stock units.

- Dr. Conway-Welch—includes options to purchase 75,250 shares and 5,465 stock units.

- Mr. Diamond—includes options to purchase 100,250 shares and 5,330 stock units.

- Ms. Gibney Williams—includes options to purchase 125,250 shares and 5,225 stock units.

- Mr. Headrick—includes options to purchase 225,250 shares, 7,048 stock units and 1,250 shares held by his spouse. Mr. Headrick disclaims beneficial ownership of the shares held by his spouse.

- Mr. McCourtney—includes options to purchase 176,750 shares and 3,579 stock units. 151,750 of the options are held by Saw Mill Partners L.P.

- Mr. Millon—includes options to purchase 21,500 shares.

- Mr. Piccolo—includes options to purchase 550,250 shares and 4,592 stock units.

- Dr. Poste—includes options to purchase 14,334 shares.

- Mr. Ware—includes options to purchase 111,084 shares.

(2) Effective March 24, 2004, Mr. Frazier retired from his employment with the Company and the Board of Directors, and Mr. Frazier and the Company entered into an agreement relating to his retirement.

## SECTION 16(A) BENEFICIAL OWNERSHIP REPORTING COMPLIANCE

Section 16(a) of the Securities Exchange Act of 1934 requires the Company's directors and officers, and persons who own more than ten percent of a registered class of the Company's equity securities, to file reports of ownership and changes in ownership with the Securities and Exchange Commission ("SEC") and the NYSE, and to furnish the Company with copies of the forms. Based on its review of the forms received, or written representations from reporting persons, the Company believes that, during 2003, each of its directors and officers complied with all such filing requirements. The Company does not have any stockholders that own more than ten percent of a registered class of its equity securities.

## ANNUAL REPORT ON FORM 10-K

The Company is providing to each stockholder as of the record date a copy of the Company's Annual Report on Form 10-K concurrently with this Proxy Statement, including the financial statements and financial statement schedules, as filed with the SEC, except exhibits thereto. The Form 10-K exhibits are available through the Company's website as described below. The Company will also provide copies of these exhibits upon request by eligible stockholders, and the Company may impose a reasonable fee for providing such exhibits. Requests for copies of such exhibits should be mailed to Caremark Rx, Inc., 211 Commerce Street, Suite 800, Nashville, Tennessee, Attention: Corporate Secretary. The Company also makes this Proxy Statement, its Annual Report on Form 10-K, Quarterly Reports on Form 10-Q and Current Reports on Form 8-K available free of charge through its website at http://www.caremarkrx.com.

By Order of the Board of Directors,

Sara J. Finley
*Corporate Secretary*

Nashville, Tennessee
April 9, 2004

29

**EXHIBIT B**



| Username / Login | Password | | Web Site Privacy Policy | Search |
|---|---|---|---|---|

**Submit**

Not registered?  Forgot username?   Forgot password?

| Home | Prescriptions & Coverage | Health Resources | Customer Care | About Caremark | For Clients | For Health Professions |
|---|---|---|---|---|---|---|

**Company Overview**

Home: About Caremark: Careers

## Caremark Locations

**Careers**
- Search Jobs
- Facilities and Locations
- Community and Culture
- Caremark Benefits
- Career Events

**News & Events**
- Press Releases
- Events

**Investor Relations**
- Analysts
- Corporate Governance
- SEC Filings
- Earnings Estimates
- Stock Quotes & Charts
- Investor FAQs
- Contacts
- Information Requests

**Products & Services**
- Pharmacy Benefit Management
- Specialty Pharmacy
- Disease Management
- Mail Services

**Contact Caremark**

**WEB SITE PRIVACY POLICY**

Site Map

Some of Caremark's campus locations include:

**Headquarters**

Caremark Rx, Inc.
211 Commerce Street Suite 800
Nashville, TN 37201

**Operations Centers**

**Scottsdale**
9501 E. Shea Boulevard
Scottsdale, AZ 85260-6719

**Scottsdale**
8901 East Mount View Road
No. 280
Scottsdale, AZ 85260

**Irving**
750 W. John Carpenter Freeway
Suite 1200
Irving, TX 75039

**Northbrook/Lincolnshire**
2211 Sanders Road
Northbrook, IL 60062

**Accordant Health Services, Inc**
Wingate Building
4900 Koger Boulevard Suite 300
Greensboro, NC 27407-2710

**Baumel-Eisner Neuromedical Institute**
7301 N. University Drive Suite 300
Tamarac, FL 33321

**Baumel-Eisner Neuromedical Institute**
5458 Town Center Road, Suite 5
Boca Raton, FL 33486

**Baumel-Eisner Neuromedical Institute**
1090 Kane Concourse Suite 204
Miami Beach, FL 33154

**Consumer Health Interactive**
539 Bryant Street, No. 200
San Francisco, CA 94107

**IScribe**
101 Redwood Shores Parkway, Suite 101
Redwood City, CA 94065



Caremark is growing in Phoenix, Arizona! Find pharmacist and technician opportunities in Phoenix. >>



Join the Caremark team! Search for job opportunities. >>



Want to see what mail service pharmacist jobs at Caremark are really like? View video clips. >>

Caremark.com - Careers

TheraCom, Inc.
9717 Key West Avenue
Rockville, MD 20850

**Mail Service Pharmacies**

**Birmingham Pharmacy**
2700 Milan Court
Birmingham, AL 35211

**Fort Lauderdale Pharmacy**
15800 SW 25th Street
Miramar, FL 33027

**Fort Worth Pharmacy**
2105 Eagle Parkway
Fort Worth, TX 76177

**Mount Prospect Pharmacy**
800 Biermann Court
Mount Prospect, IL 60056

**Phoenix Pharmacy**
4121 East Cotton Center Boulevard
Phoenix, AZ 85040

**San Antonio Pharmacy**
7034 Alamo Downs Parkway
San Antonio, TX 78238

**Wilkes-Barre Pharmacy**
Hanover Crossings Business Park
No. 1 Great Valley Boulevard
Wilkes-Barre, PA 18702

**Prescription Repackaging Facility**

**Vernon Hills**
940 Woodlands Parkway
Vernon Hills, IL 60061

**Customer Service Centers**

**Campbell Call Center**
1300 E. Campbell Road
Richardson, TX 75081

**Mather Call Center**
10481 Armstrong Avenue
Mather, CA 95655

**Knoxville Call Center**
2401 Cherahala Boulevard
Knoxville, TN 37932

**Via Linda Call Center**
9060 East Via Linda
Scottsdale, AZ 85260

**Kansas City Call Center**
800 NW Chipman Road, Suite 5830
Lee's Summit, Missouri 64063

**San Antonio Call Center**
6950 Alamo Downs Parkway

San Antonio, TX 78238

**San Antonio Call Center**
814 Arion Parkway
San Antonio, TX 78216

**Specialty Pharmacies**

**Richardson SpecialtyRx**
909 E. Collins Boulevard
Richardson, TX 75081

**Theracom – Rockville**
9717 Key West Avenue
Rockville, Maryland 20850

**Atlanta Specialty Pharmacy**
1000 Cobb Place Boulevard NW, Suite 270
Kennesaw, GA 30144

**Baltimore Specialty Pharmacy**
8945 Guilford Road, Suite 110
Columbia, MD 21046

**Boston Specialty Pharmacy**
115 Cedar Street, Suite N3
Milford, MA 01757

**Dallas Specialty Pharmacy**
2100 North Highway 360, Suite 1700
Grand Prairie, TX 75050

**Detroit Specialty Pharmacy**
29524 Southfield Road, Suite 100
Southfield, MI 48076

**Hawaii Specialty Pharmacy**
Pali Palms Plaza
970 North Kalaheo Avenue, Suite C-106
Kailua, HI 96734

**Kansas City Specialty Pharmacy**
11162 Renner Boulevard
Lenexa, KS 66219-9621

**Memphis Specialty Pharmacy**
1682 Shelby Oaks Drive North, Suite 1
Memphis, TN 38134

**Minneapolis Specialty Pharmacy**
1891 West County Road C
Roseville, MN 55113-1304

**Mount Prospect Specialty Pharmacy**
800 Biermann Court, Suite B
Mount Prospect, IL 60056

**New Orleans Specialty Pharmacy**
125 Mallard Street, Suite C
St. Rose, LA 70087-4020

**Pine Brook Specialty Pharmacy**
45 US Highway Route 46E, Suite 607
Pine Brook, NJ 07058

**Pittsburgh Specialty Pharmacy**
500 Business Center Drive

Pittsburgh, PA 15205-1333

**Raleigh Specialty Pharmacy**
543 Pylon Drive
Raleigh, NC 27606

**Redlands Specialty Pharmacy**
1127 Bryn Mawr Avenue
Redlands, CA 92374

**Seattle Specialty Pharmacy**
19102 North Creek Parkway, Suite 110
Bothell, WA 98011

**Tampa Specialty Pharmacy**
7930 Woodland Center Boulevard, Suite 500
Tampa, FL 33614

**Choice Source Therapeutics – Daphne**
1048 Stanton Road, Suite A/B
Daphne, AL 36526

**Choice Source Therapeutics – Houston**
20333 State Highway 249, Suite 450
Houston, TX 77070

**CareCenter Pharmacies**

**Waverly**
646 S. Waverly Road
Holland, Michigan 49423

**San Antonio**
7034 Alamo Downs Parkway, Suite B
San Antonio, TX 78238

**Medical Call Centers**

**Scottsdale**
9501 E. Shea Boulevard
Scottsdale, AZ 85260-6719

**San Antonio**
6950 Alamo Downs Parkway
San Antonio, TX 78238

**Information Technology Centers**

**Scottsdale**
9501 East Shea Boulevard
Scottsdale, AZ 85260-6719

**Scottsdale (Mercado)**
10301 North 92 Street
Scottsdale, AZ 85260

**Bannockburn**
1000 Lakeside Drive
Bannockburn, IL 60015

**Lincolnshire**
25 Tristate International
Suite 300
Lincolnshire, IL 60069

**Richardson**
Cardinal Tech/Data Services Center
1703 North Plano Road
Richardson, TX 75081

**Sales Office**

**Atlanta**
5607 Glenridge Drive, Suite 300
Atlanta, GA 30342

**Fairview Park**
Superior Office Services
22021 Brookpark Road, Suite 100
Fairview Park, OH 44126

**Evanston**
1889 Maple Avenue, Unit 8W
Evanston, IL 60201

**Mendham**
26 Kingsbrook Court
Mendham, NJ 07945

**North Wales**
1120 Welsh Road STE 190
North Wales, PA 19454

**Overland Park**
7101 College Park Boulevard, No. 350
Overland Park, KS 66210

**Puerto Rico**
IBM Building
654 Luis Munoz Rivera Avenue
Hato Rey, San Juan, Puerto Rico

**Windsor**
200 Day Hill Road
Windsor, CT 06095

**Worthington**
Corporate Hill IV
250 Old Wilson Bridge Road STE 122
Worthington, OH 43085

**Westchester**
Westbrook Corp Center
1 Westbrook Corp Center, Suite 640
Westchester, IL 60154

**Clinical Office**

**Hunt Valley**
11350 McCormick Road
Executive Plaza II, Suite 1000
Hunt Valley, MD 21031

**Minneapolis**
5701 Green Valley Dr
Minneapolis, MN 55437-1005

**Other Locations**

**Paper Claims Operations**

Cardinal III Building
1705 North Plano Road
Richardson, TX 75082

**Claims/Eligibility**
1731 Grandstand Parkway
San Antonio, TX 78238

**Government Relations/Marketing**
1300 I Street, NW
Suite 525 West
Washington, DC 20005

**Caremark RX**
3000 Galleria Tower, Suite 1000
Birmingham, AL 35244-2359

Terms & Conditions | Web Site Privacy Policy | HIPAA Notice of Privacy Practices | Contact Caremark | Site Map/Help

Copyright © 2005 Caremark Inc.



Caremark.com is a
VeriSign™-secure site